UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONNY ALEXANDER ESCOBAR, | No. 1:25-cv-01801-DJC-EFB |
| Petitioner, | |
| v. | ORDER |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner filed a Petition for Writ of Habeas Corpus (Pet. (ECF No. 1)) and a Motion for Temporary Restraining Order (Mot. (ECF No. 2)).  In the Motion, Petitioner seeks an order enjoining Respondents from removing Petitioner via a third-country deportation without providing him notice and adequate opportunity to be heard. (*See* Mot. at 17.)  For the reasons stated below, the Court grants Petitioner's Motion for Temporary Restraining Order.

**BACKGROUND**

Petitioner is a citizen of El Salvador who entered the United States in 2022. (Pet. ¶¶ 17–18; Opp'n (ECF No 13) at 1.)  When Petitioner entered, he was contacted by authorities and detained.  (Pet. ¶ 18.)  Petitioner has been in the custody of immigration officials since this initial detention.  (*Id.*)

1

On October 10, 2025, an Immigration Judge ordered Petitioner removed but deferred Petitioner's removal to El Salvador under the Convention Against Terror ("CAT"). (Mot. ¶ 16; Pano Decl. (ECF No. 13-1) ¶ 14.) Neither Petitioner nor the Government has appealed that determination, and the time to do so has expired. (Mot. ¶ 18.) Petitioner has since been informed by Immigration and Customs Enforcement ("ICE") that they are seeking to remove Petitioner to a third country. (Mot. ¶ 2.)

Briefing on Petitioner's Motion is now complete (Mot.; Opp'n; Reply (ECF No. 14)), and this matter was taken under submission without oral argument (*see* ECF No. 6).

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." See *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted).

**DISCUSSION**

**I. Jurisdiction**

Respondents argue that this Court lacks jurisdiction over Petitioner's underlying habeas petition based on the limitations on district court jurisdiction imposed by 8 U.S.C. § 1252. This argument is unpersuasive. Petitioner is not seeking review of the removal order or challenging whether he is entitled to relief under the CAT. Instead,

Petitioner is requesting that this Court issue an order preventing removal to a third-party country absent statutory and due process requirements. Courts in this circuit have repeatedly held that such orders are within the jurisdiction of district courts. *See Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sep. 18, 2025), *see also A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *5 (E.D. Cal. Dec. 4, 2025) (collecting cases). Petitioner is only seeking injunctive relief regarding the process required in relation to third country removal and is not challenging the Government's decision to commence proceedings, adjudicate Petitioner's case, or execute the removal order. As such, the Court finds it has jurisdiction to review the claims raised in the Petition.

In addressing jurisdiction, Respondents assert in passing that Petitioner's concerns about being subject to third-country removal without notice and opportunity to be heard are "theoretical[.]" (Opp'n at 5.) To the extent Respondents seek to argue that Petitioner lacks Article III standing to pursue these claims, this is unfounded. A party seeking injunctive relief to prevent future injury must "establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citation omitted). It is readily apparent that the threatened injury is impending. In their Opposition, Respondents affirmatively state that "[Petitioner] has no connection to the United States and <u>may not stay here</u> . . ." and that because "[Petitioner]'s removal to El Salvador is deferred, . . . immigration authorities <u>must remove him to another country.</u>" (Opp'n at 1–2 (emphasis added).) Petitioner also alleges that ICE officials told him that they were seeking to remove him to a third country. Thus, Petitioner's future injury is not simply theoretical but impending, and Petitioner has standing.

## II. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on the merits. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Where, as here, an immigration judge enters an order withholding or deferring removal to the country initially identified in removal proceedings, the Department of Homeland Security ("DHS") conducts a "third country removal" where a noncitizen is removed to an alternate country. 8 C.F.R. § 1240.12(d). Even where DHS seeks to effectuate a third country removal, "noncitizens may not be removed to countries where their 'life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion,' or where 'it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal.'" *Mendoza v. Lyons*, No. 1:25-cv-01650-DC-SCR, 2025 WL 3514126, at *4 (E.D. Cal. Dec. 8, 2025) (quoting 8 U.S.C. § 1231(b)(3)(A) and 8 C.F.R. § 208.16).

In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 and July 9 by DHS have become frequently discussed in similar cases and are again cited by Petitioner here. (*See* Mot. ¶ 27.) The July memorandum, which incorporates the early March memorandum, has been summarized and quoted in other cases:

> On July 9, 2025, ICE issued a memorandum updating agency officials on its policy regarding third country

removals after the Supreme Court's order in *D.V.D.* That policy states:

> Effective immediately, when seeking to remove an [noncitizen] with a final order of removal—other than an expedited removal order under Section 235(b) of the Immigration and National Act (INA)—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third Country Removals, as detailed below. A 'third country' or 'alternative country' refers to a country other than that specifically referenced in the order of removal.
>
> If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances.

In "all other cases" ICE must comply with the following procedures:

- An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.

- ERO will not affirmatively ask whether the alien is afraid of being removed to the country of removal.

- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.

- - ○ Any determination to execute a removal order under exigent circumstances less, than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.

- If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.

  - ○ If the alien <u>does</u> affirmatively state a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.

  - ○ USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal.

  - ○ If USCIS determines that the alien has not met this standard, the alien will be removed.

  - ○ If USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the immigration court, USCIS will refer the matter to the immigration court for further proceedings. In cases where the alien was previously in proceedings before the immigration court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. In such cases, ERO will alert their local Office of the Principal Legal Advisor (OPLA) Field Location to file a motion to reopen with the immigration

> court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under section 241(b)(3) of the INA and CAT for the country of removal. Alternatively, ICE may choose to designate another country for removal.
>
> The policy also indicates that the "Supreme Court's stay of removal does not alter any decisions issued by any other courts as to individual aliens regarding the process that must be provided before removing alien to a third country."

*Y.T.D.*, 2025 WL 2675760, at *9–10 (citations omitted) (emphasis in original); *see Viengkhone v. Albarran*, No. 1:25-cv-01505-KES-HBK, 2025 WL 3521302, at *8 (E.D. Cal. Dec. 8, 2025); *see also Azzo v. Noem*, No. 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025).

Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent.  *See, e.g.*, *Y.T.D.*, 2025 WL 2675760, at *11; *Tran v. Bondi*, No. 2:25-cv-02335-DGE-TLF, 2025 WL 3677152, at *7 (W.D. Wash. Dec. 16, 2025); *Viengkhone*, 2025 WL 3521302, at *9; *Ao v. Noem*, No. 25-cv-03256-BAS-VET, 2025 WL 3535207, at *1 (W.D. Wash. Dec. 16, 2025); *Azzo*, 2025 WL 3535208, at *7; *see also Najjar v. Lynch*, 630 Fed. Appx. 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.")   "[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  This requires that "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise

1    and pursue his claim for withholding of deportation." *Aden v. Neilsen*, 409 F. Supp.
2    3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349
3    (1976)); *see Andriasian*, 180 F.3d at 1041 ("Failing to notify individuals who are subject
4    to deportation that they have the right to apply … for withholding of deportation to the
5    country to which they will be deported violates both INS regulations and the
6    constitutional rights to due process."). In the context of fear-based claims specifically,
7    "noncitizens have a Due Process right to have their fear-based claims for relief from
8    removal to third countries heard by a neutral adjudicator before the removal can be
9    effectuated." *Mendoza*, 2025 WL 3514126, at *5.
10         Based on the above, the Court finds that Petitioner is likely to succeed on the
11   merits of his claim on this basis. Petitioner has a clear protected liberty interest in
12   ensuring his removal is not to a country where Petitioner faces a credible fear of
13   persecution, torture, and death. *See A.A.M.*, 2025 WL 3485219, at *8. Turning to the
14   factors described in *Mathews v. Eldridge*, first, "Petitioner has a private interest in not
15   being erroneously removed to a third country with which he has no connection, and
16   where he faces potential persecution, torture, and death." *Id*. The risk of erroneous
17   deprivation is also substantial; under current DHS policy, removal may be effectuated
18   without notice and opportunity to be heard, and even where noncitizens are provided
19   notice of removal, fear-based claims are assessed on a highly expedited bases by an
20   immigration officer. Without notice, adequate time to prepare, or the ability to
21   present fear-based claims before an immigration judge, Petitioner will not have a
22   meaningful opportunity to assert fear of removal, present evidence of his claim, or
23   receive a determination from a neutral arbiter. Finally, the Government has minimal
24   interest as the cost of providing the necessary procedural safeguards is minimal. *See*
25   *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). As such, analysis of the
26   *Mathews* factors shows Petitioner has a likelihood of success on his procedural due
27   process claims.
28

1        Respondents argue that the Supreme Court's decision to stay the preliminary
2   injunctive relief ordered in the class action *D.V.D. v. U.S. Dep't of Homeland Sec.*, 145
3   S.Ct. 2153 (2025) should be considered dispositive of Petitioner's claims.  Courts in
4   this circuit have rejected the view that the stay in *D.V.D.* bars relief in similar cases.
5   Petitioner's claim for relief goes beyond what was litigated in *D.V.D.*, as Petitioner's
6   claims concern individual claims for injunctive relief as opposed to claims for
7   systematic reforms.  *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–30 (W.D. Wash.
8   2025) (citing *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013)).  Petitioner also focuses on
9   the effects of the July DHS memorandum that was issued after preliminary injunctive
10  relief was ordered and subsequently stayed in *D.V.D.*  Moreover, without the
11  opportunity to seek injunctive relief as an individual, "Petitioner would be left
12  'powerless to petition the courts for redress' until the *D.V.D.* class action has been
13  'fully resolved.'"  *Id.* at 730 (quoting *Pride*, 719 F.3d at 1137).  Thus, the Court finds the
14  stay of the order of preliminary injunctive relief in the *D.V.D.* class action does not
15  prevent Petitioner from seeking relief here.
16       Given the above, Petitioner has established a likelihood of success on the
17  merits.

18  **III. Risk of Irreparable Injury**

19       The risk of irreparable injury faced by Petitioner in the absence of preliminary
20  injunctive relief is readily apparent.  As discussed above, absent sufficient notice and
21  opportunity to be heard, Petitioner may ultimately be removed to a country where he
22  faces a risk of persecution, torture, and death.  An Immigration Judge has already
23  determined that it was more likely than not that Petitioner would face persecution and
24  torture if deported to El Salvador (*see* Mot. ¶ 1), lending real credence that there is a
25  real and present danger to Petitioner's safety in removal to some countries.
26  Moreover, Petitioner has also established irreparable harm based on the deprivation
27  of constitutional rights via immigration detention.  *See Melendres v. Arpaio*, 695 F.3d
28

990, 1002 (9th Cir. 2012); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Petitioner has thus sufficiently established the risk of irreparable injury.

### IV. Balance of Equities/Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted). Public interest concerns are also implicated, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, the acute risk of harm Petitioner faces here substantially outweighs any minor procedural inconveniences faced by the Government in ensuring Petitioner's due process rights are protected. Accordingly, this factor weighs in Petitioner's favor.

### V. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

### CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.

2. Respondents are ENJOINED AND RESTRAINED from effectuating Petitioner's third country removal without first:
   a. Providing him and his counsel with written notice in a language the Petitioner can understand.
   b. Following notice, Petitioner must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal.
   c. If Petitioner demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen his immigration proceedings.
   d. If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of his immigration proceedings.
3. Respondents are ORDERED TO SHOW CAUSE on or before December 26, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order.  The Respondents' failure to respond to the Order to Show Cause shall be construed as its non-opposition to the Court granting a Preliminary Injunction on the same terms and conditions imposed in this Order.  *See* L.R. 230(c).  On or before December 31, 2025, Petitioner may file a Reply, if any.  The Request for Preliminary Injunction is not currently set for a hearing, but the Court may subsequently order one.

IT IS SO ORDERED.

Dated:   **December 19, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE